IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARQUETTE HOUSTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | NO. 3:17-cv-01173 |
| MICHAEL SARGUNAS, | ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE NEWBERN |
| Defendant. | ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are Defendant's First Motion for Summary Judgment (Doc. No. 42); Plaintiff's Response (Doc. No. 48); Defendant's Reply (Doc. No. 54), and Plaintiff's Surreply (Doc. No. 58). For the reasons set forth herein, Defendant's Motion (Doc. No. 42) is **DENIED**.

### II. Factual and Procedural Background

In his *pro se* Complaint, Plaintiff Marquette Houston, an inmate previously housed at Riverbend Maximum Security Institution ("Riverbend"), alleges Defendant Michael Sargunas, a former correctional officer at Riverbend, used excessive force during an encounter at the facility on June 21, 2017. (Doc. No. 1). On that day, Plaintiff alleges, Defendant Sargunas and Correctional Officer Tyler Lee removed him from the recreational yard at the prison and relocated him to a new cell. (*Id.,* at 3). During the walk to the new cell, Defendant Sargunas allegedly became hostile and aggressive and shoved Plaintiff against a gate. (*Id.*) Plaintiff alleges Defendant accused him of making derogatory comments to women. (*Id.*) Once in the cell with his shackles removed, Plaintiff

alleges, Defendant got in his face and said, "now hit me." (*Id.*) According to Plaintiff, in an effort to defend himself, he pulled Defendant onto his bunk, but Plaintiff was pulled away by another officer. (*Id.*) Plaintiff alleges Defendant then began to repeatedly punch him in the face, and put him in a chokehold until he could not breathe. (*Id.,* at 3-4). Defendant allegedly told Plaintiff, "I will put your lights out," and "You better not say nothing else to my girl." (*Id.,* at 4). According to Plaintiff, Defendant was referring to Mental Health Therapist Michelle Rikli. (*Id.*)

Plaintiff alleges the altercation left the left side of his face swollen, and that he suffered lacerations to his back, and his throat hurt when he tried to swallow. (*Id.*) Plaintiff claims he told correctional officers about the incident, and that a nurse observed his injuries. (*Id.*) Plaintiff claims the force used against him was excessive and unprovoked. In his Answer (Doc. No. 10), Defendant Sargunas denies any physical altercation occurred in Plaintiff's cell on June 21, 2017.

After appointment of counsel for Plaintiff, and a considerable amount of discovery by the parties, Defendant has filed the pending motion for summary judgment, claiming the evidence in the record rebuts Plaintiff's allegations.

### III.  Analysis

#### A.  The Standards Governing Motions for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has construed Rule 56 to "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Shreve v. Franklin County, Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). The court does not make credibility determinations, weigh the evidence, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Excessive Force

The Eighth Amendment prohibits the wanton and unnecessary infliction of pain against prisoners. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). To establish an excessive force claim under the Eighth Amendment, the prisoner must satisfy both an objective component and a subjective component. *Id.* The subjective component "focuses on the state of mind of the prison officials," and "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Hudson v. McMillan,* 503 U.S. 1, 6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). In making the determination, the court considers "the need for the application of force, the relationship between the need and the amount of force used, and the extent of injury inflicted." *Id.* (quoting *Whitley,* 475 U.S. at 321). The court may also consider the circumstances "'as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.'" *Id.*

3

The objective component of an excessive force claim requires the pain inflicted to be "'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). This inquiry is "contextual" and "'responsive to contemporary standards of decency.'" *Id.* (quoting *Hudson,* 503 U.S. at 8-9). Although the seriousness of a prisoner's injury may help determine the level of force that was used, it is not dispositive as to whether excessive force has occurred. *Wilkins v. Gaddy,* 559 U.S. 34, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9; *Wilkins,* 559 U.S. at 37. Otherwise, "the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson,* 503 U.S. at 9.

Defendant argues summary judgment is warranted because the evidence in the record does not support Plaintiff's version of events. On the other hand, Plaintiff argues his own testimony, as well as other evidence in the record, supports his version of events, and calls into question the credibility of Defendant's proof. Having reviewed the evidence cited by the parties, the Court concludes that genuine issues of material fact preclude summary judgment in this case.

First, the evidence is in dispute as to whether any altercation at all took place on the day in question. Defendant and Officer Lee have testified that no altercation at all took place when they escorted Plaintiff to his cell (Deposition of Michael Sargunas, at 69, 170-71 (Doc. No. 46-4)); (Deposition of Tyler Lee, at 57-59, 64-67, 108-111 (Doc. No. 46-7)), while Plaintiff has testified that the altercation did occur. (Deposition of Marquette Houston, at PageID # 216-19 (Doc. No.

4

46-1)).[1] Plaintiff also cites the testimony of a witness who claims to have overheard Defendant and others discussing the altercation later that day. (Deposition of Robin Fish, at 28-30, 34-35 (Doc. No. 50)).

Another factual dispute involves Ms. Rikli. According to Plaintiff, he saw Ms. Rikli for mental health counseling for several months in 2017, but those sessions ended when Ms. Rikli received an unsigned letter with sexually harassing content[2] she believed was sent by Plaintiff. (Declaration of Marquette Houston, ¶¶ 4-12 (Doc. No. 59-1)).[3] Plaintiff suggests, and cites evidence in the record in support, that Defendant, who had a romantic relationship with Ms. Rikli, arranged to move Plaintiff to a new cell on June 21, 2017, so he could instigate the altercation with Plaintiff and "teach him a lesson." (Houston Declaration, ¶ 38); (Deposition of Michelle Rikli, at 44, 73-74 (Doc. No. 46-11)); (Lewis Deposition, at 86, 88-91, 102); (Sargunas Deposition, at 108-09). Defendant claims Plaintiff's testimony that he did not harass Ms. Rikli is not credible because there is substantial evidence that he did. (Rickli Deposition, at 42-47). Because he lied about the

---

[1] Defendant's brief suggests that he "will not contest Plaintiff's admitted assault" for purposes of summary judgment, "because it serves only to illustrate the underlying absurdity of Plaintiff's claims." (Doc. No. 43, at 9 n. 2). Defendant goes on, however, to rely on evidence he believes indicates the assault never occurred. This evidence clearly indicates genuine material factual disputes preclude summary judgment, despite Defendant's "concession."

[2] The letter has apparently been lost. Ernest Lewis testified that he gave the letter to Andrew Brown, and Mr. Brown does not know what happened to it. (Deposition of Ernest Lewis, at 211-12 (Doc. No. 46-16)); Deposition of Andrew Brown, at 47-48, 51-52(Doc. No. 46-8)).

[3] Defendant objects to consideration of Plaintiff's Declaration, primarily because it was "unsigned." Plaintiff subsequently filed a signed version, which is the version relied on by the Court. Defendant also suggests that the Declaration varies from Plaintiff's prior claims, but does not identify the contradictions, and does not otherwise cite authority that "declarations" are not permitted by applicable law. Thus, the Court does not address his objection. *See Murphy v. Lazarev,* 653 Fed. Appx 377, 378 (6th Cir. 2016) ("It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.")

5

harassment of Ms. Rikli, Defendant argues, Plaintiff's testimony about the altercation in his cell is not credible. But it is not appropriate for the Court to make such credibility determinations at the summary judgment stage.

Defendant also argues that Plaintiff's testimony about the incident is not credible because it is contradicted by medical proof. Nurse Maranda Dolinich claims she assessed Plaintiff at approximately 12:30 p.m. on June 21, 2017, and saw no sign of any visible injury. (Affidavit of Maranda Dolinich (Doc. No. 46-2)). Ms. Dolinich said, at that time, Plaintiff denied any injury or altercation. (*Id.*) Citing Plaintiff's medical records, Defendant also points out that Plaintiff was seen by a second nurse at 7:20 p.m. on June 21, 2017, who observed slight swelling on his left eye and two small non-bleeding lacerations on his back. (Doc. No. 47-1). According to the second nurse, Plaintiff said, "[t]hese folks beat me up." (*Id.*) Defendant suggests these injuries were self-inflicted.

On the other hand, Plaintiff claims that, shortly after the assault, Nurse Lisa Hayes, Officer Latela Marbury, and Officer Theodore Montgomery observed him lying on the floor of his cell in pain. (Houston Declaration, ¶ 41). The reason Plaintiff did not explain the cause of his pain to Ms. Dolinich, Plaintiff states, was because Defendant was in the cell with them during the examination. (Houston Declaration, ¶¶ 43-46).

Whether Plaintiff suffered injury as a result of the altercation may be relevant in determining whether the altercation occurred, but as discussed above, the existence of serious injury is not dispositive where a plaintiff alleges the force was used maliciously and sadistically to cause harm. Defendant is not entitled to summary judgment based on the medical proof (or lack thereof) in the record.

6

Defendant also argues that Plaintiff's testimony about the incident is not credible because two separate investigations – one conducted by Andrew Brown and one conducted by James Bobela – found his allegations to be unfounded. (Brown Deposition, at 90); (Deposition of James Bobela, at 27 (Doc. No. 46-9)); Exhibit 13 to Bobela Deposition (Doc. No. 46-10)). Mr. Brown claims to have watched video footage of Plaintiff's escorted walk from the recreation yard to his new cell, and did not see Plaintiff being shoved as he alleges. (Brown Deposition, at 67).

On the other hand, Plaintiff cites the testimony of Ernest Lewis, Riverbend's Warden of Security, who suggests Mr. Brown's investigation was flawed because Mr. Brown is a friend of Defendant; Mr. Brown never provided Mr. Lewis with an investigative summary; and Mr. Brown failed to preserve the video footage of the incident he claims to have watched. (Lewis Deposition, at 51-54, 59-60, 129-130, 201, 203, 206, 210); (Brown Deposition, at 37). Plaintiff also points out that Mr. Brown was terminated for poor job performance. (Lewis Deposition, at 208-09). As for the second investigation, Plaintiff points to Mr. Bobela's own testimony that his investigation was not "full-blown," and that his report of the investigation was the first and only investigative report he has ever written. (Bobela Deposition at 18, 101). Plaintiff also points out Mr. Bobela's failure to interview key witnesses, such as the other officers in the cell at the time, the medical staff, or Ms. Rikli. (*Id.,* at 40-42, 53-54, 66-67).

Whether Plaintiff's allegations are true must be decided by a jury after assessing the credibility of the witnesses providing conflicting testimony and after weighing the strength of each party's evidence. That task is not one the Court may undertake in considering a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255 (in considering a motion

7

for summary judgment, the court is not to make credibility determinations, weigh the evidence, or determine the truth of the matter).

## IV. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. No. 42) is denied.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE